UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

MATTHEW RUSSELL LEE,                    :

                                        :    Case No. ___26___-cv-__4416__

              Plaintiff,              :

                                          :

    -against-                        :    **COMPLAINT FOR
                                         INInjective**

                                          :    **COMPLAINT FOR
                                         INJUNCTIVE RELIEF**

UNITED STATES DEPARTMENT OF           :
JUSTICE, ANTITRUST DIVISION,          :

                                          :

            Defendant.              :

                                          :

------------------------------------------------------X

Plaintiff Matthew Russell Lee, by and through his undersigned counsel, alleges as follows:

**INTRODUCTION**

1.      This is an action under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA"), to compel the United States Department of Justice, Antitrust Division ("DOJ" or "Division") to disclose records concerning its settlement with Live Nation Entertainment, Inc. and Ticketmaster LLC. The Antitrust Division has withheld every record sought—every document, every email, every memorandum, every term sheet—under a single statutory exemption designed to protect ongoing law-enforcement proceedings. But there is no ongoing proceeding to protect, because the liability trial has concluded. The proceeding the Division identifies cannot justify blanket withholding of these records.

2.      On April 15, 2026, a jury in this District found Live Nation to be a monopolist. *See generally* Verdict, *United States et al. v. Live Nation Entm't, Inc.*, No. 1:24-cv-03973 (S.D.N.Y. Apr. 15, 2026) (ECF No. 1417). Five days later, on April 20, 2026, DOJ denied Plaintiff's FOIA request in full, asserting that disclosure of records concerning the Division's

mid-trial settlement "could reasonably be expected to interfere with ongoing enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). But the liability trial had concluded; the verdict was on the docket. The Antitrust Division's own statutory obligation to publish substantial portions of the settlement in the Federal Register, *see* 15 U.S.C. § 16(b)–(h), is anticipated to begin within weeks. The records sought are the records the public is statutorily entitled to evaluate. Yet the Antitrust Division has unlawfully denied the public the right to consider these documents.

3.      Plaintiff Matthew Russell Lee is the journalist who, every day during the two-month trial, sat in Courtroom 15A of this Court or the nearby S.D.N.Y. press room and covered the proceeding. He filed letter-motions before the Court seeking access to sealed exhibits and to records of off-docket communications between the parties and the Court, several of which were granted. The records Lee now seeks are the next logical step in that coverage: understanding, and informing the public about, what the United States Government did in a federal antitrust enforcement action that ended in a jury verdict of monopolization. This action seeks to compel the disclosure FOIA was enacted to require.

## PARTIES

4.      Plaintiff Matthew Russell Lee is an individual residing in New York, New York, and a journalist. He is the Executive Director of Inner City Press, a news organization he has operated since 1987. Inner City Press covers, among other subjects, federal trial-court proceedings in this District, the United Nations, and federal banking and antitrust enforcement. Lee disseminates information to the public daily through articles published at innercitypress.com, posts on the X platform under the handle @innercitypress, through Substack and Patreon, and through self-published books.

5.      Lee is recognized as a representative of the news media by the Board of Governors of the Federal Reserve System, the Office of the Comptroller of the Currency, and the Federal Deposit Insurance Corporation, each of which has granted him fee waivers and expedited treatment in respect of past FOIA requests. Lee holds a New York City Press Card issued by the Mayor's Office of Media and Entertainment. He is also accredited by the International Monetary Fund and World Bank Group, at whose 2026 Spring Meetings he recently questioned officials during press conferences.

6.      Lee has published reporting on the proceedings in *United States v. Live Nation Entertainment, Inc.* since the case was filed in May 2024 and throughout the trial that concluded on April 15, 2026. Lee was the contemporaneous press intervenor in that case, filing letter-motions seeking access to sealed trial materials, (*see, e.g., id.* ECF Nos. 1165, 1176, 1246, 1319 & 1336), several of which the Court granted.

7.      Lee's role covering the *Live Nation* trial reflects his sustained practice of seeking First Amendment access to federal judicial records and proceedings, a practice the Second Circuit recognized personally last year. *Lee v. Greenwood*, 145 F.4th 248, 254–57 (2d Cir. 2025) (holding that the First Amendment qualified right of access attaches to sentencing memoranda and accompanying exhibits, and that wholesale sealing without specific, on-the-record findings is constitutionally inadequate).[1]

8.      Defendant United States Department of Justice is a Department of the Executive Branch of the United States Government and is an "agency" within the meaning of 5 U.S.C.

---

[1] The Second Circuit's reasoning in *Lee v. Greenwood*—that categorical denial of public access cannot substitute for document-by-document analysis—applies with equal force to the categorical denial of FOIA disclosure that is the subject of this action. *See* 145 F.4th 248, 256.

§ 552(f)(1). DOJ maintains the records sought through its component, the Antitrust Division, which conducted the investigation, litigation, and settlement of the underlying antitrust action.

## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

10. Venue lies in this District under 5 U.S.C. § 552(a)(4)(B). Lee resides in this District, and the records sought concern an enforcement action filed and tried in this District.

11. This action is related to *United States et al. v. Live Nation Entertainment, Inc. and Ticketmaster LLC*, No. 1:24-cv-03973 (S.D.N.Y.), within the meaning of Local Civil Rule 1.6, in that it concerns records of the federal antitrust enforcement action presently pending before this Court, the resolution of which depends in part upon the same Tunney Act process referenced in the joint letter filed at ECF No. 1337 of the related action.

## STATUTORY FRAMEWORK

12. FOIA confers upon members of the public a statutory right of access to agency records. The statute provides that, upon a request reasonably describing the records sought and made in accordance with published agency rules, the agency "shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

13. The statute prescribes nine exemptions from disclosure. *Id.* § 552(b). The exemptions "are to be narrowly construed." *FBI v. Abramson*, 456 U.S. 615, 630 (1982). The agency bears the burden of justifying any withholding by demonstrating that the records fall within a specific exemption. 5 U.S.C. § 552(a)(4)(B).

14.    Exemption 7(A), invoked here, permits withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The exemption is temporal in nature and protects against only premature disclosure that would compromise an active investigation or trial.

15.    Under the FOIA Improvement Act of 2016, an agency may not withhold information "unless" it "reasonably foresees that disclosure would harm an interest protected by an exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I). Mere identification of an applicable exemption does not satisfy the agency's burden.

16.    FOIA further requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Wholesale withholding without segregability analysis is not authorized. *See Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

17.    FOIA also requires that agencies expedite processing of requests where the requester demonstrates a "compelling need." 5 U.S.C. § 552(a)(6)(E). The statute defines "compelling need" to include "an urgency to inform the public concerning actual or alleged Federal Government activity" where the request is made "by a person primarily engaged in disseminating information." *Id.* § 552(a)(6)(E)(v)(II). Where expedited processing is granted, the agency must process the request "as soon as practicable." *Id.* § 552(a)(6)(E)(iii).

18.    Independent of FOIA, the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16(b)–(h) (the "Tunney Act"), requires DOJ to publish proposed civil antitrust consent

judgments and supporting materials—including a Competitive Impact Statement—in the Federal Register, to solicit public comment for not less than sixty days, and to obtain judicial determination that entry of the proposed judgment is in the public interest. 15 U.S.C. § 16(b)–(e). The Tunney Act's purpose is to ensure public scrutiny of civil antitrust settlements between the United States and major economic actors.

## FACTUAL BACKGROUND

### A.    The Underlying Antitrust Action

19.    On May 23, 2024, the United States and a coalition of thirty state attorneys general filed a civil antitrust action against Live Nation Entertainment, Inc. and Ticketmaster LLC in this District. The complaint alleged that Live Nation, the dominant operator of major concert venues in the United States, had unlawfully maintained monopoly power in the primary ticketing market through exclusionary contracts with venues, retaliation against competing ticketing services, and related conduct in violation of Sections 1 and 2 of the Sherman Act. The case was assigned to the Honorable Arun Subramanian.

20.    Trial commenced on March 2, 2026. Lee was in the courtroom on the first day of jury selection and on every subsequent trial day. Lee covered the proceedings daily through Inner City Press and its associated publications, including detailed accounts of witness testimony, sealed colloquies between the Court and counsel, and the Court's rulings on contested evidentiary and sealing questions.

21.    The trial was conducted in substantial part in open court. Witnesses for the United States and the state plaintiffs testified to the substance of Live Nation's contracts with venues, its competitive practices, and the operation of its ticketing platform. Live Nation's defense was

presented in open court. The contested factual record of the alleged antitrust violation became a public record.

22.    On April 15, 2026, after deliberations, the jury returned a verdict finding that Ticketmaster willfully maintained monopoly power in the primary concert ticketing market, that Live Nation controlled, dictated, or encouraged Ticketmaster's conduct in that market, and awarded damages of $1.72 per ticket sold across twenty-two jurisdictions. *See generally* Verdict (ECF No. 1417).

### B.    The Mid-Trial Settlement

23.    Before the verdict, in mid-March 2026, the Antitrust Division and the attorneys general of six States—Arkansas, Iowa, Mississippi, Nebraska, Oklahoma, and South Dakota—settled with Live Nation. The remaining state plaintiffs (and the District of Columbia) continued the case to verdict against Live Nation and Ticketmaster.

24.    On March 27, 2026, the Antitrust Division and the six settling States filed a joint letter with the Court announcing the settlement and describing the forthcoming process under the Tunney Act. (*See* ECF No. 1337.) The letter represented that a proposed Final Judgment would be filed for entry within approximately two months, and that publication in the Federal Register and a sixty-day public comment period would follow.

25.    The Tunney Act process requires the Antitrust Division to file with the Court a Competitive Impact Statement and an Explanation of Procedures, both of which are then published in the Federal Register. *See* 15 U.S.C. § 16(b). The public is entitled to submit comments. The Court is required to determine, after public comment, whether entry of the proposed Final Judgment is in the public interest. *See id.* § 16(e). The statutory architecture

exists because Congress recognized that civil antitrust settlements between the United States and major economic actors warrant public scrutiny beyond what the litigation record alone provides.

### C.     Plaintiff's FOIA Request

26.     On March 27, 2026—the same day the Division and the six settling States filed their joint Tunney Act letter— Lee submitted FOIA Request No. ATFY26-168 to DOJ. A true and correct copy of the request is attached as **Exhibit A**.

27.     The request sought records concerning the negotiation, terms, and political context of the settlement, organized into eight categories:

a.     <u>Category 1 re: Settlement Decision</u>: (1) all records reflecting when the Antitrust Division first began settlement discussions with Live Nation Entertainment, Inc. or Ticketmaster LLC separately from the joint litigation strategy with the plaintiff states; (2) all records reflecting who initiated settlement discussions—whether Live Nation approached DOJ, DOJ approached Live Nation, or a third party brokered the contact; (3) all internal memoranda, analyses, or communications reflecting the Division's evaluation of whether to settle rather than proceed to verdict; (4) all records reflecting the criteria used to evaluate whether the settlement was in the public interest under the Tunney Act, 15 U.S.C. § 16(e); (5) all records reflecting whether any outside consultants, economists, or experts were retained to evaluate the settlement terms; (6) all records reflecting any communications between the Antitrust Division and any other component of DOJ, the White House, the Executive Office of the President, or any other federal agency regarding the decision to settle; and (8) all records reflecting any communications between the Antitrust Division and any member of Congress or congressional staff regarding the Live Nation litigation or settlement.

b.    Category 2 re: Term Sheet and Financial Terms: (8) the signed term sheet between DOJ and Live Nation Entertainment, Inc. and Ticketmaster LLC, referenced in the March 27, 2026 joint letter filed with the Court, complete and unredacted; (9) all draft term sheets exchanged during negotiations; (10) all financial analyses of what the settlement terms are worth to consumers nationally; (11) all analyses comparing the settlement terms to the relief DOJ sought in the complaint; (12) all analyses comparing the settlement terms to remedies obtained in prior DOJ Antitrust Division consent decrees in the live entertainment or ticketing industry; (13) all communications about whether the settlement includes a monetary component, restitution fund, or *cy pres* distribution; and (14) all analyses of what structural relief the settlement provides and how it compares to the structural remedies DOJ initially sought.

c.    Category 3 re: Negotiation Process: (15) all communications between the Antitrust Division and Live Nation Entertainment, Inc., Ticketmaster LLC, or their counsel, from January 1, 2025 to the present, regarding any proposed settlement, consent decree, term sheet, or resolution of the litigation; (16) all communications between the Antitrust Division and the offices of the six settling states' attorneys general—Arkansas, Iowa, Mississippi, Nebraska, Oklahoma, and South Dakota—regarding settlement terms and the decision to settle jointly; (17) all communications between the Antitrust Division and the offices of non-settling states' attorneys general regarding the decision by six states to settle separately from the ongoing trial; (18) all records of meetings, telephone calls, and in-person conferences related to settlement negotiations, including participants, dates, and locations; (19) all communications regarding the telephone conference held on or about March 26, 2026, between the settling parties and/or the Court, including any

letters or written communications exchanged in connection with that call that were referenced in open court on March 27, 2026, but do not appear on the public docket; (20) all communications regarding any agreement to substitute stipulated facts for contract documents in the trial record, including the 6,000-page Ticketmaster contract compilation admitted into evidence as PX-1282; and (21) all communications regarding the timing of the settlement announcement relative to the ongoing trial, including any communications about the strategic or procedural implications of settling during trial.

   d.    Category 4 re: Political Context: (22) all communications between the Antitrust Division and the White House, Executive Office of the President, or any component of the Office of the Attorney General regarding the Live Nation litigation or settlement; (23) all communications between the Antitrust Division and any Live Nation or Ticketmaster lobbyist, political action committee representative, or political representative regarding the litigation or settlement; (24) all records reflecting any communications between DOJ leadership and the Antitrust Division regarding the Live Nation litigation or settlement from January 20, 2025 to the present; (25) all records reflecting any communications between DOJ and any Republican Attorneys General regarding coordination of the settlement; and (26) all records reflecting any campaign contributions from Live Nation Entertainment, Ticketmaster, or their officers, directors, or counsel to any political committee or political official during the period January 1, 2022 to the present, to the extent such records are maintained by the Antitrust Division.[2]

_____

[2] As explained below, Lee later withdrew request subpart 26 in response to the Division's request to narrow the scope of his request. (**Exhibit D**, at 2 ["I will withdraw subpart 25 [*sic*] (campaign contribution records) as outside the Antitrust Division's ordinary records maintenance."].)

e.        Category 5 re: the Tuney Act Process: (27) all communications about the anticipated 60-day public comment period and how DOJ plans to evaluate and respond to public comments; (28) all analyses of whether the settlement satisfies the Tunney Act's public interest standard, 15 U.S.C. § 16(e); (29) all drafts of the Competitive Impact Statement that DOJ is required to file pursuant to 15 U.S.C. § 16(b); (30) all drafts of the Explanation of Procedures Under the Antitrust Procedures and Penalties Act referenced in the March 27, 2026 joint letter; (31) all communications about the possibility of additional states joining the settlement and what terms would be required, including the statement in the March 27, 2026 joint letter that the settling parties "stand ready to consider any adjustments to the proposed Final Judgment that may be appropriate to facilitate a broader resolution"; and (32) all communications about the Tunney Act § 16(g) filing that Defendants are required to make disclosing certain communications, and what communications DOJ anticipates will be disclosed therein.

f.        Category 6 re: Trial Strategy and Evidence: (33) all communications about which trial exhibits, witness testimony, or evidence the Antitrust Division considered most valuable to the public record and most probative of the alleged violations; (34) all communications about sealing motions filed by Live Nation, Oak View Group, AEG, Madison Square Garden, or other third parties during the trial, including any DOJ position on those motions; (35) all communications about Inner City Press's unsealing motions or letters to Judge Subramanian in the above-captioned litigation, and any DOJ response or position thereon; (36) all communications about the substitution of stipulated facts for the 6,000-page Ticketmaster contract compilation (PX-1282) or other trial exhibits, including any communications about how such substitution affects the public

record of the trial; and (37) All communications about the testimony of Mark Yovich, including his testimony on March 26, 2026, and any DOJ assessment of that testimony.

g.    Category 7 re: Consumer Impact: (38) all analyses of how many consumers nationally were harmed by the alleged anticompetitive conduct of Live Nation and Ticketmaster; (39) all analyses of what remedies consumers will receive under the proposed settlement; (40) all analyses of the Taylor Swift Eras Tour presale collapse of November 2022, including any DOJ assessment of its causes and whether the proposed settlement addresses those causes; and (41) all consumer complaints received by DOJ regarding Ticketmaster, Live Nation, ticket pricing, service fees, or ticket availability, from January 1, 2019 to the present, to the extent not previously produced.

h.    Category 8 re: Venues and Concert Markets: (42) all records reflecting what the Antitrust Division knew or learned about Ticketmaster's contracts with venues nationally, including any venue-specific ticketing agreements, exclusivity provisions, fee structures, or rebate arrangements reviewed during the investigation or litigation; (43) all records reflecting what the Antitrust Division knew or learned about whether venues were able to use ticketing companies other than Ticketmaster, and whether any venues attempted to switch ticketing providers and encountered obstacles; (44) all records reflecting whether the proposed settlement requires modification of any existing Ticketmaster venue contracts, and if not, the basis for that decision; and (45) all records reflecting what the Antitrust Division knew or learned about the contracts included in PX-1282, the 6,000-page compilation of 125 Ticketmaster venue contracts admitted into evidence at trial, and whether any such contracts are addressed by the proposed settlement.

28.     Lee requested expedited treatment and a fee waiver, citing his status as a representative of the news media, his sustained coverage of the underlying action, and the time-sensitivity created by the impending Tunney Act publication and public comment period.

29.     By letter dated March 30, 2026, signed by Kathy Hsu, Chief of the Antitrust Division's FOIA/Privacy Act Unit, the Division acknowledged receipt of Lee's request, granted expedited processing, and assigned the request to a Government Information Specialist. A true and correct copy of the March 30, 2026 acknowledgment letter is attached as **Exhibit B**.

30.     The acknowledgment letter stated that the Division would "respond to your request as soon as practicable" and invited Lee to consider narrowing the scope of his request in order to "speed up our process." (*Id.* at 1-2.)

31.     On March 30, 2026, Kimberley Kochurka, a Government Information Specialist for the Antitrust Division, emailed Lee separately requesting that he narrow the scope of his request to reduce processing burden and to allow the Division to "speed up [its] process." The Division specifically requested that Lee identify custodians, keywords, search terms, and a date range, and requested a response by April 6, 2026. A true and correct copy of Ms. Kochurka's March 30, 2026 email is attached as **Exhibit C**.

32.     On April 4, 2026, well within the response time set by the Division, Lee provided all four parameters the Division had requested. A true and correct copy of Lee's April 4, 2026 narrowing email and Ms. Kochurka's April 6, 2026 acknowledgment are attached as **Exhibit D**.

33.     In response, Lee specifically:

i.      identified custodians, including the lead trial attorneys on the *Live Nation* case, the Division's front office, and any economist or expert retained for settlement evaluation;

j.      supplied search terms, including "term sheet," "Tunney Act," "public interest," "settlement," "consent decree," "March 26," "six states," and the names of the six settling States;

k.      proposed a date range of January 1, 2025, to present, with one carve-out for older consumer-complaint records;

l.      proposed a three-tier rolling-production prioritization that front-loaded Tunney-Act-required documents—including the term sheet, drafts of the Competitive Impact Statement, and drafts of the Explanation of Procedures—that the Division was statutorily obligated to publish within weeks;

m.      narrowed seven specific subparts of his original request[3] and withdrew subpart 26 entirely—campaign contribution records—as outside the Division's ordinary records maintenance; and

n.      reaffirmed his request for rolling production, fee waiver, and expedited processing.

34.      By email dated April 6, 2026, Ms. Kochurka replied: "Thank you for getting back to me! I appreciate it." (*See* **Exhibit D**, at 1.) The Division did not request additional narrowing, did not propose alternative parameters, and did not indicate that Lee's cooperative narrowing was insufficient.

---

[3] In specific, Lee offered to narrow his original request's subparts as follows: subpart 22, limited to "communications between DOJ leadership and the Antitrust Division regarding the Live Nation litigation or settlement from January 20, 2025 to present"; subpart 23, to "formal written communications only rather than all records"; subpart 35, to "any written DOJ position or response only, excluding internal deliberations"; and subparts 41-44 to "records specifically referencing the 125 venue contracts in PX-1282 and the proposed settlement's effect on those contracts, rather than all venue contract records." (**Exhibit D**, at 2-3.)

14

**D.      The Jury Verdict and the In-Full Denial**

35.      On April 15, 2026, eleven days after Lee's narrowed request, the jury returned its verdict of monopolization. *See generally* Verdict (ECF No. 1417).

36.      On April 20, 2026, five days after the verdict, the Antitrust Division denied Lee's FOIA request in full. A true and correct copy of the April 20, 2026 denial letter is attached as **Exhibit E**.

37.      The denial letter, signed by Kathy Hsu, asserted only that "the records responsive to your request relate to ongoing enforcement proceedings, and their disclosure could reasonably be expected to interfere with those proceedings." The Division invoked Exemption 7(A) of FOIA, 5 U.S.C. § 552(b)(7)(A), and produced no documents.

38.      The denial did not identify any specific record being withheld. It did not categorize the records by type. It did not address segregability under 5 U.S.C. § 552(b). It did not engage with the cooperative narrowing Lee provided. It did not acknowledge the jury verdict that had concluded the underlying enforcement proceeding five days earlier. It did not address the Antitrust Division's own imminent statutory obligation to publish substantial portions of the same settlement in the Federal Register. The denial recited the language of the exemption and announced the result.

**E.      The Administrative Appeal and OIP Affirmance**

39.      Lee appealed the same day. A true and correct copy of Lee's April 20, 2026 administrative appeal is attached as **Exhibit F**.

40.      The appeal argued, among other things, that (a) Exemption 7(A) does not justify withholding in full; (b) the civil jury trial had concluded; (c) the Division's assertion of interference with enforcement proceedings was unsupported by particularized justification; (d) the settlement is subject to the Tunney Act's mandatory transparency regime, with which a

15

blanket Exemption 7(A) invocation is incompatible; and (e) the Division failed to perform any segregability analysis.

41.     On April 30, 2026, the Department of Justice Office of Information Policy ("OIP") affirmed the denial in full. A true and correct copy of the OIP affirmance is attached as **Exhibit G**.

42.     The affirmance, signed by Christina Troiani, Chief of the Administrative Appeals Staff, recited the same Exemption 7(A) rationale and added that Lee was "not entitled" to itemization of the withheld records "at the administrative stage of processing FOIA requests and appeals." (*Id.* at 1.) OIP did not address the verdict. OIP did not address the Tunney Act. OIP did not address the cooperative narrowing.

43.     Lee has exhausted all administrative remedies available to him under FOIA. 5 U.S.C. § 552(a)(6)(A)(ii).

**F.      The Categorical Withholding Is Incompatible with the Record**

44.     Exemption 7(A) authorizes withholding only of records the disclosure of which "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The exemption is temporal in nature and protects against premature disclosure that would compromise an active investigation or trial. *See Robbins Tire*, 437 U.S. at 232.

45.     There is no active investigation. DOJ's investigation of Live Nation produced the May 2024 complaint. The investigation gave way to litigation. The litigation gave way to trial. The trial gave way to verdict on April 15, 2026.

46.     There is no ongoing trial. The trial concluded on April 15, 2026.

47.     The settlement the Antitrust Division has elected to characterize as "ongoing enforcement proceedings" is, by the Antitrust Division's own representation to this Court, days

or weeks away from public filing under the Tunney Act; public comment; and judicial review for public-interest sufficiency. The records Lee seeks are the records that statute and ordinary practice require the Antitrust Division to disclose, on a timeline the Antitrust Division has chosen. The Antitrust Division's position is that disclosure of those same records, requested by a journalist before they reach the Federal Register, would "interfere" with the proceedings that culminate in their disclosure. The position is incoherent.

48.    In any event, Exemption 7(A) does not authorize categorical, in-full withholding without particularized justification or segregability analysis. *See N.Y. Times Co. v. Fed. Bureau of Investigation*, 297 F. Supp. 3d 435, 445–46 (S.D.N.Y. 2017) (Abrams, J.); *Mead Data*, 566 F.2d at 260 ("The focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material.").The Division's denial of Lee's request, premised on a single conclusory sentence reciting the statutory language, does not satisfy the Division's burden.

49.    Nor has the Division made the foreseeable-harm showing required by 5 U.S.C. § 552(a)(8)(A)(i)(I). The denial letter contains no foreseeable-harm analysis whatsoever. (*See* **Ex. E**.)

## FIRST CAUSE OF ACTION
*Violation of FOIA, 5 U.S.C. § 552*

50.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

51.    Plaintiff has a statutory right under FOIA, 5 U.S.C. § 552(a)(3)(A), to obtain the records he has requested. There is no legal basis for the Division's denial of that right.

52.    The records sought are agency records within the meaning of 5 U.S.C. § 552(f)(2) and are in the possession, custody, or control of the Antitrust Division.

17

53.    Exemption 7(A) does not authorize the Division's in-full denial. The underlying enforcement proceeding has concluded on the merits with a jury verdict of monopolization. The records sought do not, and could not, "interfere" with proceedings for which the liability trial has concluded. To the extent the Division contends that ancillary post-verdict activity constitutes "ongoing enforcement proceedings," such activity is conducted on the public record and is, in any event, subject to the Tunney Act's mandatory disclosure regime. The proceeding the Division identifies cannot justify blanket withholding of these records.

54.    The Division's denial fails to provide the particularized justification required for Exemption 7(A) withholding. The denial recites the statutory language and announces the result, without identifying any specific record, category of records, or specific harm.

55.    The Division's denial fails to comply with the segregability requirement of 5 U.S.C. § 552(b). The Division performed no segregability analysis and did not produce any reasonably segregable non-exempt portion of any record. *See Mead Data*, 566 F.2d at 260–61.

56.    The Division's denial fails to satisfy the foreseeable-harm requirement of 5 U.S.C. § 552(a)(8)(A)(i)(I). The denial letter contains no analysis of any reasonably foreseeable harm to any interest protected by Exemption 7(A).

57.    The Division's in-full denial accordingly constitutes the improper withholding of agency records within the meaning of 5 U.S.C. § 552(a)(4)(B), entitling Plaintiff to injunctive relief compelling production.

## SECOND CAUSE OF ACTION
*Violation of FOIA's Expedited Processing Requirement, 5 U.S.C. § 552(a)(6)(E)*

58.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

18

59.     FOIA requires expedited processing of requests if the requester demonstrates a "compelling need" for the materials. 5 U.S.C. § 552(a)(6)(E)(i). A "compelling need" encompasses requests "made by a person primarily engaged in disseminating information" that relate to an issue to which there is an "urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(v)(II). Expedited processing is also appropriate where there is "widespread and exceptional media interest" in the matter that presents "possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv).

60.     Plaintiff is "primarily engaged in disseminating information" within the meaning of 5 U.S.C. § 552(a)(6)(E)(v)(II), as set forth in paragraphs above.

61.     There is an "urgency to inform the public concerning actual or alleged Federal Government activity" with respect to the records sought. The records concern the Antitrust Division's mid-trial settlement with six state attorneys general in a federal antitrust enforcement action that has now culminated in a jury verdict of monopolization. The Antitrust Division is statutorily obligated to publish substantial portions of the resulting settlement in the Federal Register and to solicit public comment on whether entry of the proposed Final Judgment is in the public interest. 15 U.S.C. § 16(b)–(e). The public comment period extends sixty days from publication. *Id.* § 16(b). The public's ability to evaluate the settlement and to submit informed comments depends on access to the records sought, which illuminate the settlement's negotiation, terms, and rationale beyond what the Federal Register publication itself will disclose.

62.     Plaintiff requested expedited processing in his March 27, 2026 FOIA request on the bases set forth in the preceding paragraphs.

63.    By letter dated March 30, 2026, the Antitrust Division granted Plaintiff's request for expedited processing. *See* Exhibit B.

64.    Notwithstanding the grant of expedited processing, the Antitrust Division has failed to process Plaintiff's request "as soon as practicable" within the meaning of 5 U.S.C. § 552(a)(6)(E)(iii). Specifically:

a.    the Division has produced no records in response to Plaintiff's request, despite Plaintiff's cooperative narrowing of the request on April 4, 2026 designed to facilitate prompt production;

b.    the Division's April 20, 2026 denial of the request in full, premised on Exemption 7(A), did not constitute processing "as soon as practicable" because, as set forth in the First Cause of Action, the denial substituted categorical refusal for the substantive processing the statute requires;

c.    the Division has therefore rendered Plaintiff's grant of expedited treatment meaningless by substituting categorical denial for the prompt processing the statute requires; and

d.    the Tunney Act publication and public comment period referenced in the preceding paragraphs is anticipated to commence within weeks of the filing of this Complaint, and the records sought are of substantially greater value to the public during the comment period than after it has closed.

65.    DOJ's failure to process Plaintiff's request "as soon as practicable" violates 5 U.S.C. § 552(a)(6)(E)(iii) and entitles Plaintiff to an order compelling the Antitrust Division to complete its processing of the narrowed request and produce all non-exempt records on an expedited schedule consistent with the impending Tunney Act timeline.

66.    This Court has jurisdiction to grant such relief under 5 U.S.C. § 552(a)(4)(B), which provides that the district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Expedite this action in every feasible manner, pursuant to 28 U.S.C. § 1657(a);

B.    Declare that Defendant's withholding of records responsive to FOIA Request No. ATFY26-168 violates 5 U.S.C. § 552(a)(3)(A), and that the categorical invocation of Exemption 7(A) is unsupported by the administrative record;

C.    Declare that Defendant has failed to process Plaintiff's request "as soon as practicable" in violation of 5 U.S.C. § 552(a)(6)(E)(iii);

D.    Order Defendant to conduct an adequate search for records responsive to Plaintiff's request, applying the custodians, search terms, and date range identified in Plaintiff's April 4, 2026 narrowing email;

E.    Order Defendant to produce all non-exempt records and reasonably segregable portions thereof on a rolling basis and on an expedited schedule, consistent with Plaintiff's grant of expedited processing and the impending Tunney Act publication and public-comment period;

F.    Order Defendant, with respect to any continued withholding, to provide Plaintiff and the Court with a detailed *Vaughn* index addressing each withheld document or portion thereof, identifying the specific FOIA exemption claimed for each, and providing the factual and legal basis for the claimed exemption with sufficient specificity to permit meaningful judicial review;

21

G.      Enjoin Defendant from withholding records responsive to Plaintiff's request except as authorized by specific, on-the-record findings supported by the *Vaughn* index;

H.      Award Plaintiff his costs and reasonable attorney's fees incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

I.      Grant Plaintiff such other and further relief as this Court deems just and proper.

Dated: May 27, 2026                   Respectfully submitted,

                                      **MARTZ LAW, A PROFESSIONAL CORPORATION**

                                      By: */s/ Gunnar Karl Martz*
                                      Gunnar Karl Martz
                                      gunnar@martz.law

                                      1401 21st Street, Suite R
                                      Sacramento, CA 95811
                                      Tel. (949) 416-8767

                                      *Attorney for Plaintiff Matthew Russell Lee*

22